I'm Jack Schweigert and I'm here on behalf of Silver Galindo, and I'd ask that you reserve a little time, if you would, for rebuttal. I'd like to focus, if I can, in view of a short time, on what I think is somewhat misleading in the answering brief that didn't get covered in the reply brief. And that is, if you take a look at pages 13 and 37 of the answering brief, this issue deals with counts 10 and 11. We're talking about whether there was a robbery that included the taking of drugs. And the reason that the taking of drugs is critical, it's got to be the knowing and intentional possession of drugs with the intent to distribute. And that's count 11. That count 11 depends upon there actually being the knowing and intentional possession of drugs. That's count 10. And the evidence that was set forth in the record below on whether there was a taking of drugs by Silver Galindo, so as to be a knowing, intentional possession of a drug which is critical for drug trafficking crime, the only evidence was there was no evidence, in fact, even the government concedes, there was no evidence that drugs were actually taken. And the reason I'm pointing to pages 13 and 37 is you see that the person from whom the drugs are taken is himself a cooperating witness in this case. And he himself has been doing drugs and dealing drugs and was doing drugs all that day at the Pacific Marine Hotel. And he apparently, although the time is really confusing, after he has allegedly been robbed, and I use the word allegedly been robbed because his wife at some point in her testimony, and you'll see I've attached her full testimony as a supplemental excerpt, says that at first her husband reported the drugs were missing, or the car was missing, excuse me, and that they went looking for the car and when they couldn't find the car, that's when her husband said that the car was robbed. But be that as it may, she also did a 252, which is a police report, and in that police report she says her husband calls her and says that the car has been stolen. But the point I'm drawing out is that you're looking for, in count 10, evidence that there has, in fact, been a taking of drugs. Pardon me, counsel. I have count 10 as possession with intent to distribute 5 grams or more of methamphetamine in violation of section 11, possession of a firearm during and in relation to a drug trafficking crime, as charged in count 10. Right. Am I reading it wrong? No. Where's the requirement of a robbery? Is your point that possession with intent to distribute requires that the defendant have stolen the drugs from somebody else, or could he have bought the drugs? There's no evidence that Silver Galindo had drugs. The only evidence... There's evidence of whether he robbed the drugs from somebody else. Well, the government was using the robbery, the alleged robbery of drugs, which was never established, as the basis for count 10, because... Well, how he got the drugs, whether he got them by robbery, purchase, or good fortune, is irrelevant to whether he had possession with intent to distribute. Is that true? That's true. Why are you talking about robbery, then? If you're talking about insufficiency of the evidence under Jackson v. Virginia, you should be honing in on whether there's any evidence that he had possession of the drugs, regardless how he got them. Right. So tell me about that. There is no evidence of that. There's no evidence of possession? No evidence of possession of drugs. We're talking about count 10. They're saying, and the basis for the government's claim in count 10 that Mr. Galindo is possessing drugs is that he stole them when he took them from this guy named Mr. Fair from the Pacific Marine Hotel. It's not that Mr. Galindo was caught some day, and on that particular day, he happened to have on him 5 grams or more of methamphetamine. It's not that he made a sale to an undercover agent where there was 5 grams or more. It's that he came to a hotel, the Pacific Marine Hotel, where Mr. Fair was ostensibly with a lady named Desiree, who he's doing drugs with, that Mr. Galindo comes to that hotel and steals those drugs. And it's those drugs that are the basis for count 10. So even though you're absolutely right, Judge, that it makes no difference who steals the drugs or who doesn't steal the drugs or how they get the drugs, whether they distribute them or buy them or whatever. No, Mr. Fair said Galindo took my drugs. He never said that. Yeah, he did. He said that Mr. Galindo took my drugs, right? No. And see, that's – he never – and the government will even concede that Mr. Fair never said Galindo took – The position is that there's no evidence that Mr. Ferrer ever pointed the finger at Mr. Galindo for having taken or otherwise received the drugs. That's correct. And there was no evidence that Mr. Galindo was found with the drugs on his body, so there's no evidence that he had possession. I'll ask counsel for the government to address that point in his presentation. You're absolutely right, Your Honor. In other words, the sole basis for the government's argument that on the date in question, which is February 29th, that Mr. Galindo has drugs on him, the sole basis for that – or July, excuse me, July 31st of 2003, the sole basis for that possession charge is not anything other than Mr. Ferrer allegedly had drugs on July 31st. And Mr. Ferrer is doing drugs with a lady named Desiree Taddeo, and that Mr. Galindo breaks into their room and steals a lot of things, included of which is the drugs. But when questioned, there's never any testimony in the record that you will find that Mr. Ferrer indicates that included in what was taken from him was his drugs, yet that was the only purpose of putting Mr. Ferrer on, was to establish the basis for drugs. And, Paige, the reason I wanted to draw your attention to pages 13 and 36 is because the drug is methamphetamine, and methamphetamine is commonly referred to, I guess, according to street language as stuff. And the way the question appears on page 37, it seems to say – it starts on 36 and runs on into 37. Ferrer told Elma – Ferrer's the person, the victim in this case, who has apparently got the drugs in the first place – Ferrer told Elma – Elma is his wife – that the car was stolen and that he was just robbed. So this is the callback after Mr. Ferrer has been robbed, allegedly. And he also mentioned that the money wallet, watch, even necklace and the car, as well as his stuff. That's the part I want to draw your attention to, George, because that's where the misleading comes in. It says, Ferrer told Elma that he took money wallet, watch, even his necklace and car. That's the record at 45. Ferrer also mentioned his stuff. But that's not how the word stuff got mentioned. If you take a look at the actual record, the record will say, he told me he was tied up on the edge of the bed and that they took all his wallet, his money, his watch, and even the necklace and the car. Then the question is raised by a U.S. attorney. Did he talk about drugs? I assume, yes, he called it stuff. He called it stuff. What did he say about the stuff? He told me that this guy, he owes this guy the stuff, something like that. Keeping in mind that Mr. Ferrer is a drug dealer, was doing drugs all that day, and was busted for drug sales, that statement means absolutely nothing. And it certainly doesn't say, you would think he would say, that Mr. Ferrer would say in response to the question, he would say, he stole my drugs. That's the whole purpose for bringing Mr. Ferrer to the trial. He owed the man the stuff? I'm sorry? Did you say, did you read, he owed the man the stuff? He owes this guy the stuff. He owes this guy the stuff. And he's a drug dealer. Right. And that is not sufficient evidence for a rational prior fact to find that Mr. Galindo took the stuff from Mr. Ferrer and left the room? Especially since Mr. Ferrer had been dealing drugs all day long. Mr. Galindo admitted twice that he robbed Ferrer. And after the departure, there was absolutely nothing left in the room. Well, no, that's also a misleading point, I believe, in the brief. Because we don't really have a good time base. We have Mr. Ferrer saying that the robbery took place, he says, about 9 to 12. What are we reviewing, in your view? Are we retrying? We're reviewing a retrial on that count, yes. We're looking to see if there is a reasonable basis for the jury to conclude. Right. And I submit to you that the only thing that could come back from the testimony that is in this record is speculative, at best. You would think that if they're, they're not bringing Mr. Ferrer in to testify about a robbery. They're bringing Mr. Ferrer on the stand to testify about the taking of drugs so that there can be possession of drugs by my client. With the use of a firearm. With the use of a firearm, right, your Honor. So that the whole purpose of his testimony is not to identify that a watch was taken or that a wallet was taken, but that drugs were taken. He never says that. He never says drugs were taken. And then when his wife is talking about it later, the only reason she mentioned drugs before she says is because she knew her husband dealt in drugs. And she knew that her husband was doing drugs that day. Now the part that I think that really lays it out is that Ferrer even says he's going to call the cops to report this robbery. But then he remembers, he remembers that he's on the run, he says, because he hasn't checked in with his PO. You would think he would say, but I can't do that because I'm going to have to re-implicate myself in a drug transaction. If, in fact, there was a taking of drugs. That's a good jury argument. On July 31st. Thank you very much. I'd like to save a few minutes if I can. I should have had you in my jury session. I didn't say I was going to vote for you. Okay. You might have been saying it's a question for the fact finder, not for the court officer. May I please the court? Good morning. Darren Ching. I'm with the United States. Your Honor, the defendant implicitly concedes at page 27 of his opening brief that there is sufficient evidence to establish that the defendant had, in fact, robbed Hector Ferrer. However, the crux of his argument is that there was insufficient evidence because Hector Ferrer never specifically said, quote, Mr. Galindo took my drugs. Was he ever asked at trial whether he stole methamphetamine? He was not asked that question. And obviously, because we're here, if he had been asked that question, it would not be an issue. Could you point to me the testimony in the record that comes closest to establishing that Mr. Galindo took Mr. Ferrer's drugs and not just his money and his car? There are a few things, including rational inferences that can be drawn from those facts. But more specifically, the testimony that he had the drugs, the two ounces of drugs, when he was in the room. Who's he? He being the victim, Hector Ferrer. All right. Ferrer had drugs. Two ounces of methamphetamine. Where is that evidence? In the record, he testifies that it's the supplemental excerpt of records at page 16. 16. Yes, Your Honor. So Ferrer had the drugs. Right. Now, answer Judge Nelson's penetrating question. The circumstantial evidence that came out was after Galindo had barged into the room, pointed a firearm at him and said, where are the, where's the dope? He was tied up. Mr. Galindo and Desiree Tarial, the person that had. He testified that Galindo said, where's the dope? Ferrer? Yes, he did. Ferrer testified that Galindo specifically said, as he pointed the firearm at him, where's the dope? The defendant then tied up Mr. Ferrer and had him face down on the bed. Ferrer couldn't see what was going on, but Desiree Tarial, the person that had set him up in this drug ripoff, left with Galindo. Mr. Ferrer then testified that he went out to see what was going on and noticed that his wife's car was being stolen also, and those keys were next to the pouch that had the two ounces of methamphetamine. Hector Ferrer then testified that he didn't need to go back into the room because there was nothing left in the room of his. Circumstantially, given that the keys were stolen that was next to the pouch with the two ounces of methamphetamine and there was nothing left in the room, the reason for inference is that Mr. Galindo, in fact, took the drugs. Now, it's also important to look at the fact that this was a setup. Hector Ferrer was dealing drugs, and Desiree Tarial knows that. Desiree calls him up on July 31, 2003, and asks Hector Ferrer specifically, do you have methamphetamine to smoke? He replies yes. She says, well, can you come pick me up? I'd like to smoke methamphetamine with you. Mr. Ching, what about the testimony of Ferrer's wife about the stuff? Right. Are you canceling that as prohibitive? No, it's very prohibitive because when asked specifically about what was stolen or, excuse me, what Hector Ferrer said when he called his wife, Alma, she mentioned certain things that were stolen. She didn't specifically say drugs. In other words, she didn't testify that Hector said they took my drugs also. But on a follow-up by the government, the question was asked, what about the drugs? And she replied, yes, I assumed that's what he was talking about when he said stuff. And Hector Ferrer testified earlier that he had told his wife that he was in the room with Desiree Tarial because she wanted to buy stuff. She didn't come clean and say basically he was in a room with another woman that he was having an affair with and they were actually smoking methamphetamine. Was that testimony regarding the stuff at Supplemental Excerpt of Record 45 and was it anyplace else? Your Honor, I believe that's correct. It was only in the Supplemental Excerpt of Record. All right. So if we read that, we'll have the most probative testimony that the wife gave. Yes, that the wife gave. But back to the rational inferences that can be based on the facts that were brought out at trial. Basically, this was a setup for drugs. Desiree calls him, finds out that he has drugs, comes back to the hotel room with him, starts smoking drugs. Then she specifically asks, how much drugs do you have? And he replies, I have two ounces. Now, two ounces is a distributional amount, and that came out at trial through expert testimony. That was worth approximately $4,000. That can be broken down into eight balls or one-eighth of an ounce portions to be sold. So clearly it's a large amount of drugs. She knows that. What does she do next? She starts playing on her phone. The reasonable inference with regard to that is she's texting Galindo because less than 30 minutes later, Galindo shows up at the door or knocks at the door, and Ferrer doesn't want to open the door. He's worried because he doesn't know who's at the door. What Desiree Tarreal does is she tells Hector to open the door. He says, no, I'm not. Hector tells Desiree, go to the bathroom. She says, no. Hector then starts to reach for the pouch containing the two ounces of methamphetamine. But before he can get there, what does Desiree do? She opens the door to let Galindo in. So clearly what we have here, the reasonable inference is she basically set Hector Ferrer up to be robbed by Galindo of these two ounces of drugs. More importantly, Galindo then comes in, pointing a firearm at Ferrer, and says, where's the dope? He ties him up, face down on the bed. They leave. The dope isn't there anymore. Why did the prosecutor not ask Ferrer, did Galindo take your dope? I can't speculate as to that. I wasn't the person questioning Mr. Ferrer. It should have been asked. It could have been asked. Maybe it shouldn't have been asked because what if Ferrer had said, I don't know. I didn't see anything. Well, clearly he couldn't have seen anything because he was face down on the bed. But the reasonable inference is it was there when Galindo barged in. It was there when Galindo pointed the firearm at him and said. Ferrer is a cooperating witness with the government, right? Yes, Your Honor. The scenario that he described can't be the first time described by Ferrer when he takes a stand. He had to have talked to the U.S. attorney about what his testimony was going to be. And the U.S. attorney doesn't ask him why the $64 question. Did the man take your dope? Your Honor, again, I. Does that sound a little suspicious? It could sound suspicious, and I would be speculating, but it could have been. I mean, is that suspicious or negligent? It could have been oversight. But, again, when you look at the direct evidence that came out, as well as the circumstantial evidence and the rational inferences based thereon, I think any rational chart of fact could have found the essential elements beyond a reasonable doubt. And I think when the court applies this highly differential standard that it needs to give credit to the jury and it needs to allow them to weigh the facts and draw reasonable inferences therefrom. And those inferences should support the verdict. And in this particular case, the jury did make this finding. It wasn't asked. The specific question wasn't asked. But that doesn't mean that there wasn't evidence that Mr. Galindo had, in fact, stolen these drugs, thereby possessing it, and thereby having sufficient evidence to find him guilty in count 10 of the indictment. So your basic theory is that there was evidence that there was drug dealing in the room, that people were smoking, et cetera. Mr. Galindo said, I robbed Mr. Ferrer. On two occasions, Your Honor. On two occasions. We also have the fact that with regard to Mr. Galindo, one month before trial in this particular case, he tells an inmate at FTC who happens to be the brother of Desiree Tarial, hey, I know your sister was subpoenaed for this trial. Tell her to lie. Tell her to discredit Hector. Tell her nothing happened. So that's a clear consciousness of guilt incident. If it didn't really happen, there wouldn't be a need for him to make someone else lie for him at trial. As well as the fact that Hector Ferrer states, I had this stuff, and when Mr. Galindo leaves, it's no longer there. Your Honors, the government feels that it will rely on the brief for the rest of the issues, unless the Court has specific questions. Your Honors, at this time, the government has nothing further and does ask this Court to affirm the defendant's conviction. Thank you. What's your theory why you didn't ask at the trial for the man to take your drugs? Well, I've done briefings with government agents, and they go over everything. They go and they have multiple meetings, and they give that witness everything that that witness has ever said. And they tell that witness even what the defense counsel is likely to ask. And to think that they didn't go over the issue. There's only one purpose to calling Mr. Ferrer, and that is to establish the drug possession for Count 10. And to not ask him that question means he either didn't know, which is very likely because he didn't even know the month. Or he didn't think it was necessary. He thought it was perfectly obvious that when he said he was there, we had the drugs. When he left, we didn't have them. But that's a question because was there even drug – I'm sorry, Your Honor. Go ahead. There's even a question as to whether there were drugs there. Remember, they had been – he picked up Desiree. Wasn't Desiree also in the room? Desiree was also in the room. At the time that Mr. Ferrer was face down, tied down, right? Correct. So there's also an Eric Collier. There's another witness in the room. Desiree could have made off with the drugs. Desiree could have made off. There's a fourth person actually in the room besides Mr. Galindo. There's Mr. Galindo, Eric Collier, Desiree Taddeo, and Mr. Ferrer. Who decides who made off with the drugs when this case is being tried? The jury. And the jury, though, would have heard this question. And this is what I think is the critical point as to whether there was even any drugs left. Remember, Mr. Ferrer always used this room. He would go to this room two to three times a week. He always used this room because this room gave him advantage of his car. And he said specifically, you know, once he had time, there's a split moment there where he's gone to the front door, and he's looked out the front door, and he sees that there's people that he doesn't recognize. And his first thought was these are police officers. And then he goes towards the bathroom. He goes towards the bathroom, and he tells Desiree to come to the bathroom. Instead, she's going to the door while he's going to the pouch to hide whatever's in the pouch. And we have to assume he was successful if what was being hidden is drugs. And why do we say that? Because the first and only question that Silver Galindo ever asked Mr. Ferrer when he comes in the room, where is the dope? Thank you very much, Ryan. Enjoy talking in front of people. The reason I'm laughing is because certainly he asked where's the dope, but he didn't mean the dope isn't where it can be seen. He means I want the dope. And that might go against you because that might say he got it. I guess the point of all that is is that you're speculating. Thank you very much, Judge. We wouldn't speculate. The jury would either speculate or not. And that's the point. The fact is that the jury may say he did. Didn't they on this record? They convicted. They did. Yes, they did, Judge. Thank you all very much. Thank you very much, Mr. Rodgers. The matter is now submitted.
judges: Farris, Nelson D. W., Bea